489 U.S. 180 (1989)
IN RE McDONALD
No. 88-5890.
Supreme Court of United States.
Decided February 21, 1989
ON MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
PER CURIAM.
Pro se petitioner Jessie McDonald requests that this Court issue a writ of habeas corpus pursuant to 28 U. S. C. § 2241(a). He also requests that he be permitted to proceed in forma pauperis under this Court's Rule 46. We deny petitioner leave to proceed in forma pauperis. He is allowed until March 14, 1989, within which to pay the docketing fee required by Rule 45(a) and to submit a petition in compliance with this Court's Rule 33. We also direct the Clerk not to accept any further petitions from petitioner for extraordinary writs pursuant to 28 U. S. C. §§ 1651(a), 2241, and 2254(a), unless he pays the docketing fee required by Rule 45(a) and submits his petition in compliance with Rule 33. We explain below our reasons for taking this step.
Petitioner is no stranger to us. Since 1971, he has made 73 separate filings with the Court, not including this petition, *181 which is his eighth so far this Term. These include 4 appeals,[1] 33 petitions for certiorari,[2] 19 petitions for extraordinary writs,[3] 7 applications for stays and other injunctive relief,[4] *182 and 10 petitions for rehearing.[5] Without recorded dissent, the Court has denied all of his appeals and denied all of his various petitions and motions. We have never previously denied him leave to proceed in forma pauperis.[6]
The instant petition for a writ of habeas corpus arises from petitioner's 1974 state conviction for obtaining title to a 1972 Ford LTD automobile under false pretenses, for which he was sentenced to three years' imprisonment. Petitioner appealed to the Tennessee Court of Criminal Appeals, which reversed his conviction on the ground that there was no evidence *183 that the alleged victim relied on petitioner's false statements. In January 1976, the Supreme Court of Tennessee reinstated his conviction. State v. McDonald, 534 S. W. 2d 650. We denied certiorari, 425 U. S. 955, and rehearing, 425 U. S. 1000 (1976).
In the 13 years since his conviction became final, petitioner has filed numerous petitions and motions for relief in this Court and in the Tennessee courts, all of which have been rejected. In the instant petition, for example, he requests that the Court "set aside" his conviction and direct the State to "expunge" the conviction "from all public records." He is not presently incarcerated. He contends that his constitutional rights were violated by the State's failure to prove that the property to which he obtained title under false pretenses was valued at over $100, as required by the statute under which he was convicted. Petitioner has put forward this same argument  unsuccessfully  in at least four prior filings with the Court, including a petition for mandamus, which was filed 13 days before the instant petition and was not disposed of by the Court until more than a month after this petition was filed.[7]
Title 28 U. S. C. § 1915 provides that "[a]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor." (Emphasis added.) As permitted under this statute, we have adopted Rule 46.1, which provides that "[a] party desiring to proceed in this Court in forma pauperis shall file a motion for leave to so proceed, together with his affidavit in the form prescribed in Fed. Rules App. Proc., Form 4 . . . setting forth with particularity facts *184 showing that he comes within the statutory requirements." Each year, we permit the vast majority of persons who wish to proceed in forma pauperis to do so; last Term, we afforded the privilege of proceeding in forma pauperis to about 2,300 persons. Paupers have been an important  and valued  part of the Court's docket, see, e. g., Gideon v. Wainwright, 372 U. S. 335 (1963), and remain so.
But paupers filing pro se petitions are not subject to the financial considerations  filing fees and attorney's fees  that deter other litigants from filing frivolous petitions. Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. The continual processing of petitioner's frivolous requests for extraordinary writs does not promote that end. Although we have not done so previously, lower courts have issued orders intended to curb serious abuses by persons proceeding in forma pauperis.[8] Our order here prevents petitioner from proceeding in forma pauperis when seeking extraordinary writs from the Court.[9] It is perhaps worth noting that we have not granted the sort of extraordinary writ relentlessly sought by petitioner to any litigant  paid or in forma pauperis  for at least a decade. *185 We have emphasized that extraordinary writs are, not surprisingly, "drastic and extraordinary remedies," to be "reserved for really extraordinary causes," in which "appeal is clearly an inadequate remedy." Ex parte Fahey, 332 U. S. 258, 259, 260 (1947).
Petitioner remains free under the present order to file in forma pauperis requests for relief other than an extraordinary writ, if he qualifies under this Court's Rule 46 and does not similarly abuse that privilege.
It is so ordered.
JUSTICE BRENNAN, with whom JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE STEVENS join, dissenting.
In the first such act in its almost 200-year history, the Court today bars its door to a litigant prospectively. Jessie McDonald may well have abused his right to file petitions in this Court without payment of the docketing fee; the Court's order documents that fact. I do not agree, however, that he poses such a threat to the orderly administration of justice that we should embark on the unprecedented and dangerous course the Court charts today.
The Court's denial not just of McDonald's present petition but also of his right to file for extraordinary writs in forma pauperis in the future is, first of all, of questionable legality. The federal courts are authorized by 28 U. S. C. § 1915 to permit filings in forma pauperis. The statute is written permissively, but it establishes a comprehensive scheme for the administration of in forma pauperis. filings. Nothing in it suggests we have any authority to accept in forma pauperis pleadings from some litigants but not from others on the basis of how many times they have previously sought our review. Indeed, if anything, the statutory language forecloses the action the Court takes today. Section 1915(d) explains the circumstances in which an in forma pauperis pleading may be dismissed as follows: a court "may dismiss the case if *186 the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." (Emphasis added.) This language suggests an individualized assessment of frivolousness or maliciousness that the Court's prospective order precludes. As one lower court has put it, a court's discretion to dismiss in forma pauperis cases summarily "is limited . . . in every case by the language of the statute itself which restricts its application to complaints found to be frivolous or malicious." Sills v. Bureau of Prisons, 245 U. S. App. D. C. 389, 391, 761 F. 2d 792, 794 (1985) (emphasis added). Needless to say, the future petitions McDonald is barred from filing have not been "found to be" frivolous. Even a very strong and well-founded belief that McDonald's future filings will be frivolous cannot render a before-the-fact disposition compatible with the individualized determination § 1915 contemplates.
This Court's Rule 46 governs our practice in cases filed in forma pauperis. No more than § 1915 does it grant us authority to disqualify a litigant from future use of in forma pauperis status. Indeed, Rule 46.4 would seem to forbid such a practice, for it specifies that when the filing requirements described by Rule 46 are complied with, the Clerk "will file" the litigant's papers "and place the case on the docket." Today we order the Clerk to refuse to do just that. Of course we are free to amend our own rules should we see the need to do so, but until we do we are bound by them.
Even if the legality of our action in ordering the Clerk to refuse future petitions for extraordinary writs in forma pauperis from this litigant were beyond doubt, I would still oppose it as unwise, potentially dangerous, and a departure from the traditional principle that the door to this courthouse is open to all.
The Court's order purports to be motivated by this litigant's disproportionate consumption of the Court's time and resources. Yet if his filings are truly as repetitious as it appears, it hardly takes much time to identify them as such. *187 I find it difficult to see how the amount of time and resources required to deal properly with McDonald's petitions could be so great as to justify the step we now take. Indeed, the time that has been consumed in the preparation of the present order barring the door to Mr. McDonald far exceeds that which would have been necessary to process his petitions for the next several years at least. I continue to find puzzling the Court's fervor in ensuring that rights granted to the poor are not abused, even when so doing actually increases the drain on our limited resources. Cf. Brown v. Herald Co., 464 U. S. 928 (1983) (BRENNAN, J., dissenting). Today's order makes sense as an efficiency measure only if it is merely the prelude to similar orders in regard to other litigants, or perhaps to a generalized rule limiting the number of petitions in forma pauperis an individual may file. Therein lies its danger.
The Court's order itself seems to indicate that further measures, at least in regard to this litigant, may be forthcoming. It notes that McDonald remains free to file in forma pauperis for relief other than extraordinary writs, if he "does not similarly abuse that privilege." Ante, at 185. But if we have found his 19 petitions for extraordinary writs abusive, how long will it be until we conclude that his 33 petitions for certiorari are similarly abusive and bar that door to him as well? I am at a loss to say why, logically, the Court's order is limited to extraordinary writs, and I can only conclude that this order will serve as precedent for similar actions in the future, both as to this litigant and to others.
I doubt  although I am not certain  that any of the petitions Jessie McDonald is now prevented from filing would ultimately have been found meritorious. I am most concerned, however, that if, as I fear, we continue on the course we chart today, we will end by closing our doors to a litigant with a meritorious claim. It is rare, but it does happen on occasion that we grant review and even decide in favor of a litigant who previously had presented multiple unsuccessful *188 petitions on the same issue. See, e. g., Chessman v. Teets, 354 U. S. 156 (1957); see id., at 173-177 (Douglas, J., dissenting).
This Court annually receives hundreds of petitions, most but not all of them filed in forma pauperis, which raise no colorable legal claim whatever, much less a question worthy of the Court's review. Many come from individuals whose mental or emotional stability appears questionable. It does not take us long to identify these petitions as frivolous and to reject them. A certain expenditure of resources is required, but it is not great in relation to our work as a whole. To rid itself of a small portion of this annoyance, the Court now needlessly departs from its generous tradition and improvidently sets sail on a journey whose landing point is uncertain. We have long boasted that our door is open to all. We can no longer.
For the reasons stated in Brown v. Herald Co., supra, I would deny the petition for a writ of habeas corpus without reaching the merits of the motion to proceed in forma pauperis. For the reasons stated above, I dissent from the Court's order directing the Clerk not to accept future petitions in forma pauperis for extraordinary writs from this petitioner.
NOTES
[1] See McDonald v. Alabama, 479 U. S. 1061 (1987); In re McDonald, 466 U. S. 957 (1984); McDonald v. Tennessee, 432 U. S. 901 (1977); McDonald v. Purity Dairies Employees Federal Credit Union, 431 U. S. 961 (1977).
[2] See McDonald v. Tobey, 488 U. S. 971 (1988); McDonald v. Metropolitan Government of Nashville and Davidson County, 481 U. S. 1053 (1987); McDonald v. Tennessee, 475 U. S. 1088 (1986); McDonald v. Tennessee, 474 U. S. 951 (1985); McDonald v. Leech, 467 U. S. 1208 (1984); McDonald v. Humphries, 461 U. S. 946 (1983); McDonald v. Metropolitan Government of Nashville and Davidson County, 461 U. S. 934 (1983); McDonald v. Draper, 459 U. S. 1112 (1983); McDonald v. Thompson, 456 U. S. 981 (1982); McDonald v. Metropolitan Government of Nashville and Davidson County, 455 U. S. 957 (1982); McDonald v. Tennessee, 454 U. S. 1088 (1981); McDonald v. Draper, 452 U. S. 965 (1981); McDonald v. Tennessee, 450 U. S. 983 (1981); McDonald v. Draper, 450 U. S. 983 (1981); McDonald v. Metropolitan Airport Authority, 450 U. S. 1002 (1981); McDonald v. Metropolitan Government of Nashville and Davidson County, 450 U. S. 933 (1981); McDonald v. United States District Court, 444 U. S. 900 (1979); McDonald v. Birch, 444 U. S. 875 (1979); McDonald v. United States District Court and McDonald v. Yellow Freight Systems, Inc., 444 U. S. 875 (1979); McDonald v. Thompson, 436 U. S. 911 (1978); McDonald v. Tennessee, 434 U. S. 866 (1977); McDonald v. Davidson County Election Comm'n, 431 U. S. 958 (1977); McDonald v. Tennessee, 431 U. S. 933 (1977); McDonald v. Tennessee, 429 U. S. 1064 (1977); McDonald v. Tennessee, 425 U. S. 955 (1976); McDonald v. Tennessee, 423 U. S. 991 (1975); McDonald v. Tennessee, 416 U. S. 975 (1974); McDonald v. Tennessee, 415 U. S. 961 (1974); McDonald v. Wellons, 414 U. S. 1074 (1973); McDonald v. Metro Traffic and Parking Comm'n, 409 U. S. 1117 (1973); McDonald v. Wellons, 405 U. S. 928 (1972); McDonald v. Metropolitan Traffic and Parking Comm'n, 404 U. S. 843 (1971).
[3] In re McDonald, 488 U. S. 940 (1988) (mandamus and/or prohibition); In re McDonald, 488 U. S. 940 (1988) (mandamus and/or prohibition); In re McDonald, 488 U. S. 940 (1988) (mandamus and/or prohibition); In re McDonald, 488 U. S. 813 (1988) (common law certiorari); In re McDonald, 488 U. S. 813 (1988) (common law certiorari); In re McDonald, 488 U. S. 813 (1988) (common law certiorari); In re McDonald, 485 U. S. 986 (1988) (mandamus); In re McDonald, 484 U. S. 812 (1987) (common law certiorari); In re McDonald, 484 U. S. 812 (1987) (habeas corpus); In re McDonald, 484 U. S. 812 (1987) (common law certiorari and habeas corpus); In re McDonald, 479 U. S. 809 (1986) (habeas corpus); In re McDonald, 470 U. S. 1082 (1985) (habeas corpus); In re McDonald, 464 U. S. 811 (1983) (mandamus and/or prohibition); McDonald v. Leathers, 439 U. S. 815 (1978) (leave to file petition for writ of mandamus); McDonald v. Thompson, 434 U. S. 812 (1977) (leave to file petition for writ of habeas corpus); McDonald v. Tennessee, 430 U. S. 963 (1977) (motion to consolidate and for leave to file petition for writ of habeas corpus); McDonald v. Thompson, 429 U. S. 1088 (1977) (leave to file petition for writ of habeas corpus and other relief); McDonald v. United States Court of Appeals, 420 U. S. 922 (1975) (leave to file petition for writ of mandamus); McDonald v. Mott, 410 U. S. 907 (1973) (leave to file petition for writ of mandamus and other relief).
[4] See McDonald v. Metropolitan Government, 487 U. S. 1230 (1988) (stay); McDonald v. Metropolitan Government of Nashville and Davidson County, 481 U. S. 1010 (1987) (stay); McDonald v. Alexander, 458 U. S. 1124 (1982) (injunction); McDonald v. Draper, 451 U. S. 978 (1981) (stay); McDonald v. Thompson, 432 U. S. 903 (1977) (application for supersedeas bond); McDonald v. Tennessee, 429 U. S. 1012 (1976) (stay and other relief); McDonald v. Tennessee, 415 U. S. 971 (1974) (stay).
[5] See McDonald v. Alabama, 480 U. S. 912 (1987); In re McDonald, 479 U. S. 956 (1986); McDonald v. Tennessee, 475 U. S. 1151 (1986); In re McDonald, 471 U. S. 1062 (1985); McDonald v. Leech, 467 U. S. 1257 (1984); McDonald v. Draper, 459 U. S. 1229 (1983); McDonald v. Thompson, 457 U. S. 1126 (1982); McDonald v. Draper, 451 U. S. 933 (1981); McDonald v. Tennessee, 425 U. S. 1000 (1976); McDonald v. Tennessee, 417 U. S. 927 (1974).
[6] In the affidavit in support of his present motion to proceed in forma pauperis, petitioner states that he earns approximately $300 per month, is self-employed, and has less than $25 in his checking or savings account. He states that he has no dependents.
[7] See In re McDonald, 488 U. S. 940 (1988) (petition for mandamus and/or prohibition); In re McDonald, 484 U. S. 812 (1987) (petition for common law certiorari or habeas corpus); McDonald v. Tennessee, 475 U. S. 1088, rehearing denied, 475 U. S. 1151 (1986) (petition for certiorari); In re McDonald, 479 U. S. 809 (1986) (petition for habeas corpus).
[8] See, e. g., Procup v. Strickland, 792 F. 2d 1069 (CA11 1986); Peck v. Hoff, 660 F. 2d 371 (CA8 1981); Green v. Carlson, 649 F. 2d 285 (CA5 1981); cf. In re Martin-Trigona, 737 F. 2d 1254, 1261 (CA2 1984) ("Federal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions").
[9] Petitioner has repeatedly ignored the letter and spirit of this Court's Rule 26, which provides in part that, "[t]o justify the granting of [an extraordinary writ], it must be shown that the writ will be in aid of the Court's appellate jurisdiction, that there are present exceptional circumstances warranting the exercise of the Court's discretionary powers, and that adequate relief cannot be had in any other form or from any other court."